1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| | |
|---|---|
| MARIA R.,<br><br>                                    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>                                    Defendant.[1] | Case No.:  20-cv-01236-MMA-JLB<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFF'S MERITS BRIEF**<br><br>**(ECF No. 25)** |

18
19
20

        This Report and Recommendation is submitted to the Honorable Michael M. Anello, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

21
22
23
24
25

        On July 1, 2020, plaintiff Maria R. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits ("SSI").  (ECF No. 1.)

///

26
27
28

---

[1]     Kilolo Kijakazi, the Acting Commissioner of Social Security, is hereby substituted as defendant for Andrew Saul.  *See* Fed. R. Civ. P. 25(d).

Now pending before the Court and ready for decision is Plaintiff's merits brief (ECF No. 25) and the Commissioner's opposition (ECF No. 26).  For the reasons set forth herein, the Court recommends that Plaintiff's merits brief and request for reversal and/or remand be **GRANTED**, and that this matter be remanded for further administrative proceedings.

## I.   PROCEDURAL BACKGROUND

On October 19, 2017, Plaintiff filed an application for SSI under Title XVI of the Social Security Act and an application for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning September 7, 2016.  (Certified Administrative Record ("AR") at 122–128, 129–30.)  After her application was denied initially and upon reconsideration (AR 93–97, 102–06), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ").  (AR 108–09.)  An administrative hearing was held on April 15, 2019.  (AR 24–44.)  Plaintiff appeared at the hearing with counsel, and testimony was taken from her, as well as from a vocational expert ("VE").  (AR at 24–44.)

As reflected in her August 2, 2019 hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 7, 2016 through the date of decision.  (AR 18.)  The ALJ's decision became the final decision of the Commissioner on May 3, 2020, when the Appeals Council denied Plaintiff's request for review.  (AR 1–3.)  This timely civil action followed.

## II.   SUMMARY OF THE ALJ'S FINDINGS

In rendering her decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 7, 2016, the alleged onset date.  (AR 12.)

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease and obesity.  (AR 12.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed

in the Commissioner's Listing of Impairments.  (AR 14.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform the full range of light work."  (AR 15.)

For purposes of her step four determination, the ALJ determined that Plaintiff had past relevant work as a short order cook and security guard.  (AR 17.)  The ALJ determined that this work does not require the performance of work-related activities precluded by Plaintiff's RFC.  (AR 17.)  Accordingly, the ALJ found that Plaintiff was not disabled under the law from September 7, 2016, through the date of the decision.  (AR 18.)

## III.   PLAINTIFF'S CLAIMS OF ERROR

As reflected in Plaintiff's merits brief, the disputed issues that Plaintiff is raising as the grounds for reversal and/or remand are as follows:

1.   whether the ALJ impermissibly rejected Plaintiff's subjective symptom testimony (ECF 25-1 at 5–14);

2.   whether the ALJ improperly rejected the lay testimony of Plaintiff's sister (*id*. at 15–18); and

3.   whether the final decision of the Commissioner arises from an unconstitutional administrative process (*id*. at 18–22).

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation,

the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).  In reaching her findings, the ALJ is entitled to draw inferences which logically flow from the evidence.  *Id.*

## V.  DISCUSSION

Plaintiff contends that the ALJ committed legal error when the ALJ rejected Plaintiff's symptom testimony without articulating a legally sufficient rationale.  (ECF No. 25-1 at 5–14.)  Plaintiff further contends that the ALJ committed legal error when the ALJ failed to articulate *any* rationale for rejecting the lay testimony of Plaintiff's sister.  (*Id.* at 15–18.)  Lastly, Plaintiff contends that the Commissioner's delegation of power to the ALJ arose from an unconstitutional process, thus tainting the adjudication and requiring remand for a new hearing.  (*Id.* at 18–22.)

In response, the Commissioner argues that the ALJ's evaluation of Plaintiff's testimony was proper and supported by substantial evidence, and that Plaintiff's sister's testimony was also properly assessed.  (ECF No. 26 at 9–16.)  Finally, the Commissioner argues that even if an unconstitutional statutory removal restriction exists, this does not entitle Plaintiff to a rehearing of her disability claim.  (*Id.* at 16–30.)  The Court will address these arguments below.

### A.  Plaintiff's Subjective Symptom Testimony

#### 1.  Plaintiff's Symptom Testimony

##### a.  *Hearing Testimony*

At the administrative hearing on April 15, 2019, Plaintiff testified as follows: she cannot work because her back hurts a lot.  (AR 36.)  She cannot stand for long periods of time because her back bothers her, and when she stands up and walks, it is uncomfortable because her left leg tingles and feels numb.  (AR 36.)  She must move constantly.  (AR 36.)  Plaintiff takes medicine but does not experience any side effects.  (AR 36.)[2]  During

---

[2]  At the time Plaintiff applied for social security benefits in October 2017, she stated she was taking Levothyroxine for hypothyroidism, Lorazepam for anxiety, and Paroxetine

the day, Plaintiff tries to read her Bible, watches TV, and tries to walk, but she can only walk approximately one block. (AR 36.) She does nothing else because her back does not let her. (AR 36.) She does not have any hobbies and does not exercise, and her daughters and son do her housework. (AR 36–37.) Plaintiff can lift maybe five pounds and cannot sit or stand longer than ten to fifteen minutes. (AR 37.)

Plaintiff sometimes feels a burning sensation in her lower back, as if someone is stabbing her. (AR 38.) She feels the same pain when she is sitting and needs to stand up. (AR 38.) At the hearing, her pain level was an eight on a scale from one to ten. (AR 38.) Her pain feels like it is above an eight when she forgets to change positions. (AR 38.) She is not able to lift or carry anything heavier than a full gallon of milk, water, or juice, and the amount of weight she is lifting impacts her pain level. (AR 39.) Plaintiff plans on getting a lumbar brace. (AR 40.)

Plaintiff also experiences other symptoms in her left leg, and a doctor told her the numbness and tingling stems from her back injuries. (AR 40–41.) She feels the symptoms from her lower back to her buttocks, and then down her leg to the bottom of her foot. (AR 41.) She feels these symptoms every day. (AR 41.) Plaintiff's daughter drives her to the emergency room almost every month because her pain flares up, and she feels as if she has re-injured her back. (AR 41–42.) Plaintiff also sometimes feels pain in her neck. (AR 42.)

Plaintiff's oldest son is currently supporting her and she does not have any children she is responsible for feeding and taking care of. (AR 32–33.) Plaintiff can drive, but when she is unable to drive, it is due to pain in her back. (AR 33.)

---

HCL for depression. (AR 157.) When Plaintiff filed an appeal in March 2018, she stated she was taking Ativan and Paxil for anxiety, Levothyroxine for hypothyroidism, and Naproxen for pain. (AR 202.) As of January 2019, Plaintiff was still taking Ativan and Paxil, along with Levothyroxine and Naproxen, but had added Ibuprofen (3 times per day) and Norco (as needed for pain). (AR 415.)

Plaintiff is not currently working and is not looking for work.  (AR 34.).  She last worked as a cook at Sedexo, a cooking company, where she chopped lettuce, carried boxes of the lettuce, carried pounds of eggs, and cleaned.  (AR 34.)  The things she lifted were at least forty pounds.  (AR 34.)  She worked there for four years but left because of stress.  (AR 34.)

Plaintiff worked at Heritage Security for seven years before she worked as a cook.  (AR 34–35.)  At Heritage Security, she checked passengers and crew members and did rounds to secure the premises.  (AR 35.)  The heaviest thing she lifted was luggage, which could weigh sixty pounds.  (AR 35.)  Plaintiff also worked at JC Penny twice as a cashier and salesperson, once for about four months, before she left to work as a cook.  (AR 35.)  She also worked at the front desk at Women's Fitness World, where she checked clients, sold memberships, did pool temperature checks, and checked the machines.  (AR 35.)  She left after about six months due to childcare.  (AR 36.)

             b.   *Function Report*

In a Function Report dated December 11, 2017, Plaintiff reported the following:

Plaintiff's back problems and depression, anxiety, and panic attacks limit her ability to work.  (AR 174.)  Her back hurts when she bends, reaches, or lifts.  (AR 174.)  Plaintiff does her best to cook and clean, but she has to take breaks in between and there are some days she "just can't."  (AR 175.)  Plaintiff's sisters helped her care for her then-seventeen-year-old daughter, who Plaintiff was sometimes able to cook for.  (AR 175.)  Plaintiff's back pain and worries "about everything" affect her sleep.  (AR 175.)  Plaintiff must sit slowly to use the toilet and her daughter helps her dress; however, Plaintiff can feed and groom herself.  (AR 175.)

Plaintiff prepares her own meals on a weekly basis, including sandwiches, frozen dinners, and beans.  (AR 176.)  Most of the time, Plaintiff does not complete household chores, sometimes because she does not want to get up from bed.  (AR 176–77.)  Positive words from her family help her out.  (AR 176.)

///

Plaintiff goes outside very little but can go out alone and can drive, ride in a car, and use public transportation. (AR 177.) Plaintiff shops for food in stores. (AR 177.) Plaintiff does not have any hobbies and does not have any interest in doing anything. (AR 178.) She does not go anywhere on a regular basis but needs someone to accompany her when she does go somewhere. (AR 178.) She speaks with her family about once per week. (AR 178.)

Plaintiff reported that her condition affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, and follow instructions. (AR 179.) Plaintiff can walk no more than half a block before needing to rest for at least ten minutes. (AR 179.) She can lift no more than three pounds. (AR 179.) She does not use a cane or other assistive device. (AR 180.) She cannot follow written or spoken instructions and cannot handle stress. (AR 179–80.) Plaintiff takes medicine but does not know if any of the medicines cause side effects. (AR 181.)

### 2.    ALJ's Decision

The ALJ determined that Plaintiff's RFC allows her to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (AR 15.) In making this finding, the ALJ considered all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling ("SSR") 16-3p. Regarding Plaintiff's testimony, the ALJ found that Plaintiff's medically determinable physical impairments might reasonably be expected to cause the alleged symptoms,[3] but that Plaintiff's statements concerning the intensity, persistence, and

---

[3]    The ALJ did not find that Plaintiff's medically determinable mental impairments could reasonably be expected to produce her pain or other symptoms, and therefore did not address her symptom testimony as to her mental impairments. (AR 15–16.) Plaintiff does not challenge this finding.

limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 16.)

The ALJ summarized Plaintiff's testimony as follows:

The claimant testified she believed she was unable to work due to back pain and lower extremity numbness and tingling. She also reported difficulty sitting, standing and walking prevented her from working. She reported she uses a lumbar back brace. The claimant also testified she was 5'5 and weighed 197 pounds, which is obese corresponding to a Body Mass Index (BMI) of 32. As for residual physical abilities, the claimant reported extreme limitations noting she was able to lift no more than 5 pounds, sit or stand about 15 minutes and walk about a block. She reported no side effects from medication. Hearing Testimony.

The claimant lives in a home with her children. She is able to perform her personal care without any difficulty. She makes meals but reports the children do all household chores. With that said, the claimant has reported she was able to do laundry. The claimant reports she spends the day reading the Bible, watching television and trying to walk. She reports she is able to drive and use public transportation. She shops in stores for food and attends medical appointments. Hearing Testimony, [AR 174–82], [AR 305].

(AR 15–16.)

In finding Plaintiff's allegations of physical disability not entirely consistent with the medical and other evidence, the ALJ reasoned as follows:

With respect to the claimant's allegations of physical disability, I find these not entirely consistent with the medical and other evidence. The claimant alleges severe back pain with weakness in her lower extremities resulting in extreme physical limitations. However, the medical evidence simply fails to support the level of severity as alleged. Diagnostic imaging showed mild lumbar pathology throughout the relevant period. [AR 240, 358, 397, 1078.] There was some tenderness upon examination but no focal neurological deficits. Additionally, strength, sensation and gait were normal. [AR 378, 444, 499.] Dr. Bennink found subjective complaints were in disagreement with the objective evidence. [AR 385.] Additionally, the claimant reports ongoing activities not as limiting as one would expect given the claimant's extreme allegations of limitations. For example, the claimant drives and operates the foot controls necessary to drive, takes public transportation, and shops in stores. Hearing Testimony, [AR 177]. Additionally, despite

8

allegations of severe pain, the claimant reads the Bible and watches television without any significant reported issues.  Hearing Testimony.  Overall, I find the claimant's statements generally inconsistent with the evidence of record.

(AR 16–17.)

### 3.    Parties' Arguments

Plaintiff argues that the ALJ failed to articulate "specific, clear, and convincing reasons" for rejecting Plaintiff's testimony about the severity of her symptoms.  (ECF 25-1 at 6–14.)  Specifically, Plaintiff argues that the ALJ's rationale that Plaintiff's testimony was not supported by the objective evidence is legally insufficient standing alone.  (*Id.* at 12–13.)  Plaintiff further argues the ALJ mischaracterized her testimony regarding her daily activities, the ALJ improperly determined her daily activities were inconsistent with her testimony, and her daily activities do not indicate she is capable of maintaining substantial gainful work activity.  (*Id.* at 9–12.)

In response, the Commissioner argues that the ALJ's "decision shows that the ALJ addressed the relevant testimony, gave specific reasons supported by substantial evidence for how she evaluated that testimony, and partially credited Plaintiff's testimony by assessing a light RFC."  (ECF No. 26 at 9.)

### 4.    Legal Standard

A district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence."  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).  Where, as here, the ALJ "determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015)).  "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds not to be

credible and . . . explain what evidence undermines that testimony.'" *Id.* (alterations in original) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)).

The ALJ is not required to "perform a line-by-line exegesis of the claimant's testimony," but a "boilerplate" or "non-specific" conclusion that a claimant's testimony was "not entirely consistent" with her medical treatment does not meet the minimal requirements for assessing credibility. *Id.* at 1277–78. Moreover, "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her [RFC] determination." *Brown-Hunter*, 806 F.3d at 488. "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Id.* at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)). "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

5. <u>Analysis</u>

In her decision, the ALJ articulated the following two reasons to partially reject[4] Plaintiff's symptom testimony: (1) the objective medical evidence failed to support the severity of the pain alleged, and (2) Plaintiff's self-reported daily activities were inconsistent with the severity of the pain alleged. The Court will address each reason in turn.

///

---

[4]    The ALJ determined that Plaintiff was limited to a light RFC although no physician opined that Plaintiff was totally disabled or was limited in her ability to engage in work activity due to back pain. (AR 15–17.) Therefore, the ALJ credited Plaintiff's testimony to a large extent.

a.   *Lack of Objective Medical Evidence*

First, the ALJ found that the objective medical evidence failed to support the severity of the pain alleged by Plaintiff.  An ALJ may consider inconsistency between a claimant's symptom testimony and the objective medical evidence in the record in determining whether to discount the claimant's symptom testimony.  *See* 20 C.F.R. §§ 404.1529(c)(1)–(2), 416.929(c)(1)–(2); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012); *see also* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption."). Objective medical evidence "is a useful indicator . . . [of] the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [a claimant's] ability to work."   20 C.F.R. § 404.1529(c)(2); *see also* 20 C.F.R. § 416.929(c)(2) (same).  Substantial evidence supports this conclusion of the ALJ.

The ALJ first identified as not credible Plaintiff's testimony that she had "severe back pain with weakness in her lower extremities resulting in extreme physical limitations." (AR 16.)  The ALJ then cited the objective medical evidence which did not support the level of severity alleged by Plaintiff.  (AR 16.)  The ALJ cited diagnostic imaging that showed mild lumbar pathology throughout the relevant period.  (AR 17 (citing AR 240, 358, 397, 1078).)  The diagnostic imaging included a September 2017 x-ray of the lumbosacral spine, a December 2017 x-ray of the lumbar spine, a February 2018 MRI of the lumbar spine, and a June 2018 MRI of the lumbar spine.  (AR 240, 358, 397, 1078.) The June 2018 MRI concluded that Plaintiff had "[m]ild L4-5 and L5-S1 disc degeneration." (AR 1078.)  The ALJ also cited objective testing that found "[t]here was some tenderness upon examination but no focal neurological deficits," and normal "strength, sensation and gait." (AR 17 (citing AR 378, 444, 449).)

Next, the ALJ cited to medical notes from Dr. Justin Bennink, Plaintiff's primary care provider, indicating that he "found [Plaintiff's] subjective complaints [to be] in disagreement with the objective evidence." (AR 17 (citing AR 385).)  In the cited medical

notes, Dr. Bennink states in April 2018 that the "MRI and subjective finding [are] not in ag[]reement." (AR 385.)   The February 2018 MRI showed that Plaintiff had "[m]ild degenerative changes in the lower lumbar spine with facet hypertrophy causing mild-to-moderate right-sided neural foraminal narrowing at L5-S1," yet Plaintiff presented to Dr. Bennink with uncontrollable back pain and a complete lack of feeling in her left leg along with arm pain. (*See* AR 385, 397.)

Plaintiff argues that the ALJ failed to connect Plaintiff's testimony to the ALJ's analysis. (ECF No. 25-1 at 13.)   The Court disagrees.   The ALJ identified the testimony from Plaintiff she found not to be credible and then explained what evidence undermined that testimony. *See Lambert*, 980 F.3d at 1277.   Plaintiff further argues that this reason is insufficient "in and of itself" to reject Plaintiff's testimony. (ECF No. 25-1 at 12–13.)   The Court recognizes this limitation and turns to examine the second reason provided by the ALJ for not finding Plaintiff's symptom testimony entirely credible. *See Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (a claimant's "testimony cannot be rejected solely because the objective medical evidence does not support the severity of her impairment"); *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

### b.   *Daily Activities*

The ALJ also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not supported by her self-reported daily activities.   The ALJ noted that Plaintiff "alleges severe back pain with weakness in her lower extremities resulting in extreme physical limitations," yet "reports ongoing activities not as limiting as one would expect given [her] extreme allegations of limitations." (AR 16–17.)

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014); *see also Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("[I]nconsistent daily activities may provide a justification for rejecting symptom testimony[.]"); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (stating that a contradiction

between a claimant's daily activities and his testimony is a ground for forming the basis of an adverse credibility determination).  In other words, a court may consider inconsistencies between a claimant's words and her actions.  *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (finding the ALJ rationally determined the claimant's assertion that he was "confined primarily to resting and reclining about his own home" was inconsistent with his testimony that "he remains capable of caring for all his own personal needs, the performance of his own routine household maintenance and shopping chores, riding public transportation, and driving his own automobile"); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  "A claimant 'does not need to be utterly incapacitated in order to be disabled.'" *Revels*, 874 F.3d at 667 (quoting *Vertigan*, 260 F.3d at 1050).  "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

Daily activities may also "be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603).  To meet this standard, the ALJ "must make 'specific findings relating to [the daily] activities' and their transferability to a work setting to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

Here, the ALJ claims that Plaintiff's daily activities are "not as limiting as one would expect given [her] extreme allegations of limitations." (AR 17.)  The ALJ notes that despite

Plaintiff's testimony that she has back pain and lower extremity numbness and tingling and therefore cannot lift more than five pounds and can only sit or stand fifteen minutes and walk about a block, Plaintiff "drives and operates the foot controls necessary to drive, takes public transportation, and shops in stores." (AR 17 (citing AR Hearing Testimony, 177).) The ALJ also points out that "despite allegations of severe pain," which at the time of the hearing was reported to be an eight on a scale of ten, and was sometimes higher, Plaintiff "reads the Bible and watches television without any significant reported issues." (AR 17 (citing Hearing Testimony).)  The Court finds that the ALJ committed two errors in her analysis.

First, the ALJ erred by mischaracterizing Plaintiff's testimony. *See Garrison*, 759 3d. at 1015–16 (finding the ALJ erred where she mischaracterized the plaintiff's symptom testimony).  Although Plaintiff reported that she can drive and use public transportation, she also reported that she is only able to drive "sometimes" due to back pain, goes outside "very little," and has her daughter drive her when her back pain flares up.  (AR 33, 42, 177.)  Plaintiff also reported that she shops in stores but was unable to say how often or how long she shops.  (AR 177.)  At the same time, Plaintiff reported that she must take breaks when she cooks and cleans, has to sit slowly when she uses the toilet, does not do any housework, sometimes just cannot get out of bed, does not go anywhere regularly, can walk no more than a block, and most of the time does not do anything because of her back pain.  (AR 36–37, 175–79.)  Lastly, although the ALJ states that Plaintiff is able to read the Bible without any significant reported issues, Plaintiff testified that she "tr[ies] to read" and that she "open[s]" her Bible, thus suggesting some difficulty fully engaging in this activity.  (AR 36.)

Second, the ALJ erred in finding that these activities, if performed in the manner Plaintiff described, are inconsistent with the pain-related impairments that Plaintiff described in her testimony. *See Garrison*, 759 3d. at 1015–16 (finding the ALJ erred in determining that the plaintiff's daily activities were inconsistent with her testimony about her pain-related impairments).  Plaintiff's testimony was that due to her back pain and

lower extremity numbness and tingling, she cannot lift more than five pounds and can only sit or stand fifteen minutes and walk about a block. (AR 36–39.) These are extreme limitations that, if credited, would preclude light work.[5] However, Plaintiff's self-reported daily activities do not clearly indicate greater physical ability than she claims. Moreover, Plaintiff's daily activities do not indicate an ability to function in a workplace environment. There is no indication that the limited activities Plaintiff engages in, alone or with assistance from a family member, comprise a substantial portion of her day or are transferrable to a work environment. *See Orn*, 495 F.3d at 639. Accordingly, the Court finds that this is not a clear and convincing reason for rejecting Plaintiff's testimony about the severity of her symptoms.

### 6. Conclusion

For the foregoing reasons, the Court finds that the ALJ erred in rejecting Plaintiff's testimony about the severity of her symptoms related to her medically determinable physical impairments. *See Lambert*, 980 F.3d at 1277. Although the ALJ properly determined that the objective medical evidence does not support the severity of the pain alleged by Plaintiff, this reason "in and of itself" is insufficient to reject Plaintiff's testimony. *See Thomas*, 278 F.3d at 960; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). ///

---

[5] "Light work" is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); *see also* 20 C.F.R. § 416.967.

**B.     Lay/Nonmedical Testimony**

On December 7, 2017, Plaintiff's sister, Piedad R., submitted a Third Party Function Report.  (AR 165–73.)  In her decision, the ALJ stated the following regarding the sister's report:

> I have reviewed the Third Party Function Report completed by the claimant's sister.   [AR 165–73.]   However, I am not required to articulate how I considered such evidence from nonmedical sources.  20 CFR 404.1520c(d) and 416.920c(d).   Nonetheless, I did considered [sic] this party's statements while performing a comprehensive review of the medical and other evidence used in reaching my determination.

(AR 16.)

Plaintiff argues that the ALJ committed reversible error by failing to articulate any rationale to reject the lay testimonial evidence provided through the Third Party Function Report of Plaintiff's sister.  (ECF No. 25-1 at 16.)  Specifically, Plaintiff argues that the ALJ could only reject the testimony of Plaintiff's sister by giving germane reasons for doing so, citing *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).  (ECF No. 25-1 at 15–16.)  Plaintiff contends that if Plaintiff's sister's testimony had been fully credited, the lay testimony would support a conclusion that Plaintiff is incapable of performing gainful employment.  (*Id*. at 17.)

In response, the Commissioner argues that the revised Social Security regulations specify that the ALJ is not required to articulate how she considered evidence from nonmedical sources, such as Plaintiff's sister.  (ECF No. 26 at 13.)  The Commissioner argues that the Court should rely on the revised regulations and not on *Dodrill*.  (*Id*. at 14.)  The Commissioner further argues that there was no error in that the ALJ offered legally sufficient reasons for discounting Plaintiff's testimony and because the sister's testimony was similar to Plaintiff's testimony, the same reasons also serve as germane bases for rejecting the sister's testimony.  (*Id.* at 14–16.)

///

///

Because the Court finds that the ALJ erred in rejecting Plaintiff's symptom testimony and, as set forth below, that remand is proper on that basis, the Court declines to address this argument.

## C.   Constitutionality

Although the Court finds that remand is appropriate, the Court will address Plaintiff's constitutionality argument.  Plaintiff argues that the statutory clause for removal of the Commissioner of Social Security is unconstitutional, rendering Commissioner Andrew Saul's appointment invalid, and therefore rendering the ALJ's nondisability decision, which was issued during Commissioner Saul's tenure, tainted.  (ECF 25-1 at 18–22.)  In opposition, the Commissioner concedes that the statutory removal clause in the Social Security Act "violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause."  (ECF No. 26 at 17.)  However, the Commissioner argues that this conclusion alone does not support setting aside Plaintiff's unfavorable disability benefits determination; rather, Plaintiff must demonstrate that the unconstitutional removal clause affected the ALJ's determination of her claim, and she has failed to do so.  (*Id.* at 17–24.)  As set forth below, the Court agrees with the Commissioner.

In *Kaufmann v. Kijakazi*, 32 F.4th 843 (9th Cir. 2022), the Ninth Circuit held, as a matter of first impression, that the Social Security Act's removal provision, 42 U.S.C. § 902(a)(3), is unconstitutional, but also that it is severable from the remainder of the statute. *Id.* at 848.  Therefore, the unconstitutional removal provision "does not affect the *authority* of the underlying agency officials to act."  *Id.* at 849 (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1787–88 & n.23 (2021)).  To the extent the ALJ, the members of the Appeals Council, and the SSA Commissioner all served, at all relevant times, under valid appointments, "there is no reason to regard any of the actions taken by the [SSA] as void." *Id.* (quoting *Collins*, 141 S. Ct. at 1787).

"A party challenging an agency's past actions must instead show how the unconstitutional removal provision *actually harmed* the party—for example, if the

President would have removed the agency's head but for the provision or, alternatively, if the agency's head 'might have altered his behavior in a way that would have benefited' the party." *Id.* (quoting *Collins*, 141 S. Ct. at 1789).  Plaintiff therefore must "demonstrat[e] that the unconstitutional provision actually caused [her] harm." *Id.* (quoting *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021)).  "Absent a showing of harm, [a court will] refuse to unwind the decision[] below." *Id.* (quoting *Decker Coal Co.*, 8 F.4th at 1137).

Here, Plaintiff argues that Commissioner Saul's appointment was unconstitutional[6] and therefore the adjudication was tainted, relying on *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), and an opinion from the Office of Legal Counsel.  (ECF No. 25-1 at 18–20.)  However, the cited authority does not support the argument that Commissioner Saul's *appointment* was unconstitutional.  *See Seila L. LLC*, 140 S. Ct. at 2209 ("The only constitutional defect we have identified in the [Consumer Financial Protection Bureau's] structure is the Director's insulation from removal."); *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018) (holding that Securities and Exchange Commission ALJs are "Officers of the United States" for

---

[6]    Plaintiff does not appear to contest the constitutionality of the appointments of Nancy A. Berryhill, the ALJ, and the Appeals Council.  Nancy A. Berryhill was Acting Commissioner of Social Security at the time of Plaintiff's hearing on April 15, 2019.  Notably, as the Acting Commissioner, she enjoyed no statutory protection, 42 U.S.C. § 902(b)(4), and therefore any unconstitutional removal restriction did not extend to her.  *See Collins*, 141 S. Ct. at 1783.  Andrew Saul was the Commissioner of Social Security between June 17, 2019 and July 11, 2021, during which time the ALJ issued a decision and the Appeals Council denied review.  (*See* ECF No. 25-1 at 18.)  Although a decision was issued under Commissioner Saul's tenure, "[t]he ALJ who adjudicated Plaintiff's claim on August 2, 2019 held office under an appointment legally ratified in July 2018 by then-Acting Commissioner Berryhill."  (ECF No. 26 at 19; *see also* ECF No. 25-1 at 21.) Plaintiff's argument is therefore confined to Commissioner Saul.  (*See* ECF No. 25-1 at 21 (stating that Plaintiff is seeking to address the "issue of the agency proceeding in an unconstitutional framework during the tenure of Commissioner Saul").

purposes of the Appointments Clause of the Constitution);[7] Office of Legal Counsel, Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot., 2021 WL 2981542, at *11 (O.L.C. July 8, 2021) (concluding that "the President may remove the SSA Commissioner at will" and that "disregarding the constitutionally unenforceable restriction on removal in 42 U.S.C. § 902(a)(3) would not affect the validity of the remainder of the statute").  To the contrary, in *Collins*, the Supreme Court found that a defective removal procedure did not render the confirmed Federal Housing Finance Agency ("FHFA") Director's *appointment* invalid, and thus did not render the FHFA's actions under the Director void from the outset.  141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office.  As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void."). The same is true here.  The infirm removal provision does not render Commissioner Saul's appointment invalid, which in turn does not render the SSA's nondisability decision void from the outset.[8]

The question is therefore whether Plaintiff has demonstrated that the unconstitutional removal provision actually caused her harm.  The Court finds that Plaintiff has not presented any evidence or a plausible theory to show that the removal provision caused her any harm.  *See Kaufmann*, 32 F.4th at 849–50.  Plaintiff does not suggest any connection between the unconstitutional removal clause and the ALJ's decision denying her benefits and the Court cannot identify one in the record.  *See Collins*, 141 S. Ct. at 1802 (Kagan, J. concurring in part) (opining that "I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone" because "[w]hen an

_____

[7]     In response to the Supreme Court's holding in *Lucia*, as noted above, Acting Commissioner Berryhill ratified the appointments of all SSA ALJs in July 2018.  *See* SSR 19-1P, 2019 WL 1324866, at *2 (Mar. 15, 2019).

[8]     The Ninth Circuit in *Kaufmann* assumed for purposes if its analysis that Commissioner Saul served under a valid appointment.  *See Kaufmann*, 32 F.4th at 849.

agency decision would not capture a President's attention, his removal authority could not make a difference").  Absent a showing of harm, the Court will not unwind the SSA's decision.

Accordingly, although the Social Security Act's removal provision is unconstitutional, the Court does not find remand appropriate on this basis.

### D.    Remand is Appropriate

Plaintiff asks the Court to reverse for the payment of benefits, or in the alternative, remand for the correction of legal errors.  (ECF No. 25-1 at 13–22.)  Defendant argues the Court should affirm the Commissioner's decision, but if the Court were to find error, the "appropriate remedy would be to remand to allow the agency to further consider the evidence."  (ECF No. 26 at 29.)

When an ALJ commits error that is not harmless, "[t]he decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  Furthermore, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  On the other hand, "where the record has been fully developed such that further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke*, 379 F.3d at 593.

Here, the ALJ committed legal error that was not harmless, but this is not a case where further administrative proceedings would lack purpose.  Therefore, remand for further proceedings is the appropriate remedy.

///

///

///

## VI.   CONCLUSION AND RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that Plaintiff's merits brief and request for reversal and/or remand be **GRANTED**, and that this matter be remanded for further administrative proceedings.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation shall be filed with the Court and served on all parties **no later than July 6,  2022**.    The  document  should  be  captioned  "Objections  to  Report  and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than July 20, 2022**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449,445 (9th Cir 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir 1991).

**IT IS SO ORDERED.**

Dated:  June 2, 2022

Hon. Jill L. Burkhardt
United States Magistrate Judge